# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.: 1:11-CR-35-TLS<br>1:18-CV-350 |
| BOOKER T. SEWELL | |

## OPINION AND ORDER

Pending before the Court is the Defendant's Motion to Vacate Pursuant to 28 U.S.C. § 2255 [ECF No. 247]. Having considered the submissions of the parties, the Motion will be denied for the reasons stated in this Opinion and Order.

## BACKGROUND

The Defendant, Booker T. Sewell, is currently serving a term of imprisonment after being convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and maintaining a place for the purpose of distributing and using a scheduled II controlled substance, cocaine, and a schedule I controlled substance, marijuana, in violation of 21 U.S.C. § 856(a)(1).

The Defendant was indicted after police obtained a warrant to search a residence at a particular address on Sawmill Woods Court in Allen County, Indiana (the Residence). The warrant was based on information provided in an affidavit that outlined how controlled purchases of crack and powder cocaine led to court authorization to wiretap the telephones of several individuals in efforts to determine the supply network. Through these wiretaps, investigators identified Silvestre Castaneda as a drug supplier. By intercepting Castaneda's communications, they also identified the Defendant as a person involved in the drug trafficking

organization. During the execution of the search warrant, the police found incriminating evidence.

Before trial, the Defendant moved to suppress the evidence obtained during the search. The Court denied the motion in an Opinion and Order dated November 17, 2011 [ECF No. 32]. On March 26, 2012, the Defendant went to trial and, on March 29, 2012, a jury found him guilty of both counts [ECF No. 55]. The jury also rendered a special forfeiture verdict, finding the gun and ammunition to be involved in Count 1, and finding the cash, gun, and ammunition to be used or intended to be used to commit or to facilitate the commission of Count 2 [ECF No. 60]. On October 3, 2012, the Court held an evidentiary hearing regarding sentencing issues [ECF No. 87], and on February 10, 2014, the Court sentenced the Defendant to 360 months of imprisonment on Count 1 and a concurrent 240 months of imprisonment on Count 2, with the Defendant being an armed career criminal [ECF Nos. 113, 114].

The Defendant filed a direct appeal. The Seventh Circuit held that search warrant was supported by probable cause, that sufficient evidence supported the Defendant's conviction of being a felon in possession of a firearm, and that the district court properly applied a sentencing enhancement for the drug quantity and for possession of a firearm in connection with a controlled substance offense. *United States v. Sewell*, 780 F.3d 839, 847–50 (7th Cir. 2015). However, the court vacated the conditions of supervised release and remanded for reconsideration of the conditions. *Id.* at 850–52.

On January 12, 2016, the Court resentenced the Defendant, based on the limited remand, to the same 360 months on Count 1 and concurrent 240 months on Count 2 [ECF Nos. 160, 161]. However, after *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Defendant was no longer an armed career criminal, and on October 4, 2017, the Court conducted a resentencing hearing [ECF

No. 225]. The Court sentenced the Defendant to 312 months of imprisonment total: 120 months on Count 1 and 192 months on Count 2, consecutive. (*Id.*) The Defendant appealed the sentence, but the Seventh Circuit agreed with appellate counsel that this appeal was frivolous. *United States v. Sewell*, 715 Fed. Appx. 567 (7th Cir. Mar. 22, 2018). On October 29, 2018, the Defendant filed his § 2255 Motion to Vacate.

## DISCUSSION

Section 2255 allows a person convicted of a federal crime to seek to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is of jurisdictional or constitutional magnitude, or where there has been an error of law that "constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *See Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation omitted). Motions to vacate a conviction or correct a sentence ask a court to grant an extraordinary remedy to a person who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006). A Section 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) (relief under 2255 "will not be allowed to do service for an appeal"); *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (Section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal.") (citation omitted). Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995).

Therefore, three types of issues are procedurally barred in a § 2255 motion: (1) those that were raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional

issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds). There are exceptions to the procedural bar. First, a petitioner may raise a procedurally barred constitutional issue if he can show that there was cause for failing to raise the issue on appeal and that prejudice resulted therefrom. *Id.* ; *see also Cross v. United States*, 892 F.3d 288, 294–95 (7th Cir. 2018). Meeting the cause and prejudice standard is more difficult than establishing "plain error." *See United States v. Frady*, 456 U.S. 152, 162–66 (1982). Second, he can raise a barred constitutional issue if he can show that the Court's failure to hear the issue would result in a fundamental miscarriage of justice—which requires an actual showing of innocence. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996); *see also U.S. ex rel. Bell v. Pierson*, 267 F.3d 544, 551–52 (7th Cir. 2001) (explaining that petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of new evidence") (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (ellipses omitted)). There is no cause and prejudice exception for non-constitutional errors that could have been raised on appeal but were not. *Arango-Alvarez v. United States*, 134 F.3d 888, 891 (7th Cir. 1998). Finally, ineffective assistance of counsel claims may always be raised in § 2255 cases. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

A. ***Procedurally Barred Claims***

The Defendant argues that he is entitled to habeas relief because the search warrant affidavit for his residence did not establish probable cause. He contends that there was insufficient information presented in the affidavit to show that he was involved in drug trafficking, or that drug activity was connected to the residence.

This claim is procedurally barred because it was addressed on direct appeal, s*ee Sewell*, 780 F.3d at 844–45, and the Defendant has not identified changed circumstances, such as new evidence or binding caselaw. On appeal, the Seventh Circuit conducted an independent review of the affidavit and was convinced that the "magistrate judge had a substantial basis for his probable-cause finding." *Id.* at 845. The appellate court's review included a rejection of the Defendant's "backup argument" that the affidavit did not connect him and the drug activity to the residence to be searched. *Id.* at 846 (holding that it was reasonable to believe that the Defendant lived at the residence with his wife and that he operated his drug business from the home). The court unambiguously concluded, "[f]or all these reasons, [the Defendant's] arguments regarding probable cause are unavailing. [The agent's] comprehensive affidavit established probable cause, and the magistrate judge made the correct call in issuing the warrant. We will not disturb it on appeal." *Id.* at 847. The issue of whether the search warrant was supported by probable cause requires no further consideration.

The Defendant also challenges the Court's drug quantity findings and the scope of the relevant conduct relied upon at sentencing. He submits that he should have been sentenced only on the basis of marijuana found during the execution of the search warrant. Again, the Defendant is reiterating arguments that he presented on direct appeal and that the Seventh Circuit rejected. *Id.* at 849–50 (holding that the court's estimation that the Defendant possessed 30 to 40

kilograms of cocaine was reasonable based on the record before it); *see also United States v. Sewell*, 715 Fed. Appx. 567 (7th Cir. Mar. 22, 2018) (granting counsel's motion to withdraw on appeal where the Defendant's response to counsel's *Anders* Brief included a challenge to the drug quantity calculation).

In another challenge, the Defendant claims that his constitutional rights were violated because the movements of co-defendant Silvestre Castaneda, his cocaine and marijuana supplier, may have been electronically tracked by law enforcement onto the Defendant's curtilage without first obtaining a second warrant for the Defendant's residence. He also asserts that the Government illegally intercepted his conversations with Castaneda, whose telephone was the subject of a federal wiretap order, and that these communications should have been suppressed. The Defendant's challenges are not properly before the Court because the Defendant is attempting to use his § 2255 motion as a substitute for direct appeal.

The Defendant does not contend that he falls within the "miscarriage of justice" exception; he argues that the Court should consider the issues now because his counsel refused to raise them, despite his requests to do so, and thereby rendered ineffective assistance of counsel. Counsel's assistance is constitutionally ineffective if it runs afoul of the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), by (1) falling below an objective standard of reasonableness and (2) prejudicing the defendant such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 692–94. An attorney is entitled to a strong presumption of competence, *Id*. at 689, and review of the attorney's actions is "highly deferential," *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

Counsel was not ineffective in failing to raise either of these claims regarding Castaneda's telephone as they would not have altered the outcome of his case. The Defendant had no grounds to challenge privacy interests that belonged to Castaneda. If Castaneda, while being surreptitiously monitored via wiretaps, walked onto the Defendant's property, the privacy interest that the Government was invading (although lawfully under the warrant) was Castaneda's, not the Defendant's. *See, e.g.*, *United States v. Castetter*, 865 F.3d 977, 979 (7th Cir. 2017) ("The Constitution is not offended if, by executing a warrant to search one person (such as [Castaneda]), police learn incriminating details about another (such as [the Defendant])."). Tracking Castaneda's movements did not constitute a violation of the Defendant's Fourth Amendment rights, as the Defendant had no legitimate expectation of privacy in Castaneda's location. *Id.* (holding that the defendant lacked a privacy interest in the location of a monitored individual's vehicle.)[1]

Regarding intercepted conversations, the law does not require a separate finding of necessity for each individual named (or not named) in the wiretap application as a possible interceptee. *See* 18 U.S.C. § 2518; *see also United States v. Marcy*, 777 F. Supp. 1400, 1402 (N.D. Ill. 1991). Additionally, even an "unlawfully" intercepted communication is not subject to suppression unless there was a "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Donovan*, 429 U.S. 413, 433–34 (1977) (quoting *United States v. Giordano*, 416

---

[1] The Defendant asserted in his Reply Brief that the Government's failure to provide him with a copy of the warrant for Castaneda's telephone is a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) because it would have been exculpatory as it concerns the curtilage of the Defendant's home. The Defendant also argues that the fruit of the poisonous tree doctrine grants him standing to challenge the monitoring of Castaneda. These arguments are out of place on collateral attack. Additionally, they are without merit.

U.S. 505, 527 (1974)). And the failure to identify some of the individuals likely to be intercepted does not fall into this category. *Id.* at 435 ("If, after evaluating the statutorily enumerated factors in light of the information contained in the application, the judge concludes that the wiretap order should issue, the failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization."); *see also United States v. Santiago*, 905 F.3d 1013, 1021 (7th Cir. 2018). In any event, the Defendant was named as a potential interceptee on the wiretap authorization orders for Castaneda's telephone. The Defendant has not identified any potential grounds for the suppression of the intercepted communications that his counsel could have successfully pursued.

The Court construes some of the Defendant's arguments regarding the intercepted communication as going to their relevance, as it appears that the Defendant believes he had to first be charged with a wiretap offense before any evidence obtained from the wiretap was introduced at trial. Not only is this a non-constitutional issue, but it misunderstands the concept of relevance. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" or "is of consequence in determining the action." Fed. R. Evid. 401. The Defendant was charged with maintaining a drug involved premises. The Defendant's conversations with his drug supplier are relevant to whether he, in fact, was maintaining a house for the purposes of distributing or using controlled substances. The Defendant's arguments pertaining to the intercepted communications do not entitle him to habeas relief.

Turning to the jury's verdict, the Defendant asserts that the he was denied the right to a unanimous verdict because the Court submitted a vague and ambiguous instruction for maintaining a drug involved premises. The Defendant posits that the jury was not required to

unanimously find that he maintained a house for purposes of distributing drugs, as opposed to merely using them. He argues that this is because the Indictment was duplicitous, and the Court did not give a specific unanimity jury instruction in addition to the general instruction. The Defendant has not demonstrated cause and prejudice regarding his failure to litigate this issue on direct appeal, and it is procedurally defaulted.

The Defendant argues that it was error for the Court not to award him good time credit at the time of his sentencing on October 4, 2017. The Defendant did not raise this issue on a direct appeal. As a non-constitutional issue that could have been raised on direct appeal, it is barred on collateral review, regardless of whether the Defendant could establish cause and prejudice for the default. *See Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1998). In any event, the execution of sentences and the computation of jail time is an administrative function under the authority of the Office of the Attorney General, which has delegated this task to the Bureau of Prisons (BOP). *See United States v. Wilson*, 503 U.S. 329, 334 (1992); 18 U.S.C. § 3585(b). Sentencing courts do not calculate credit, nor do they have any authority to direct the BOP to give a prisoner credit. *See United States v. Walker*, 917 F.3d 989, 990 (7th Cir. 2019).

### B. *Ineffective Assistance of Counsel*

Several of the Defendant's grounds for relief are couched in terms of stand-alone claims of ineffective assistance of counsel in violation of the Sixth Amendment.

#### 1. *Failure to Cite to* Alleyne

The Defendant argues that his trial counsel rendered ineffective assistance when he did not advance the ruling of *Alleyne v. United States*, 570 U.S. 99 (2013). He asserts that, had

counsel cited it before the district court or on direct appeal, it would have impacted the outcome of the proceedings on the charge that he maintained a drug involved premises. The holding in *Alleyne* is that any fact that increases, or triggers, a statutory mandatory minimum is an element of the crime that must be submitted to a jury and proved beyond a reasonable doubt. 570 U.S. at 111–12. *Alleyne* does not affect the sentencing court's drug quantity determination under the advisory Sentencing Guidelines. *See United States v. Valdez*, 739 F.3d 1052, 1054 (7th Cir. 2014).

The Defendant urges that *United States v. Abney*, 812 F.3d 1079 (D.C. Cir. 2016), is "controlling on this issue." (Mot. 23, ECF No. 247.) It is not controlling, or applicable. In that case, the court analyzed whether an attorney was ineffective for failing to request a continuance of a sentencing to allow his client to possibly benefit from the Fair Sentencing Act. *Abney*, 812 F.3d at 1088–90. The Defendant does not otherwise explain how *Alleyne* is applicable to his case.

The statutory penalties the Defendant faced at sentencing for a violation of 21 U.S.C. § 856 were never altered by an additional element; they always remained at a maximum of 20 years with no mandatory minimum. Moreover, *Alleyne* merely extended the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and his counsel cited *Apprendi* in a Sentencing Brief submitted on December 17, 2012. (Sentencing Br. 1–5, ECF No. 89 (arguing that the contention that the Defendant possessed a firearm in connection with a controlled substance offense is a fact that must be proven beyond a reasonable doubt and determined by a jury)). The Seventh Circuit has "repeatedly held that when a defendant is sentenced to a term of imprisonment within the statutory maximum for the crime of which he was convicted, *Apprendi* is beside the point."

*United States v. Roberts*, 534 F.3d 560, 573 (7th Cir. 2008) (quoting *United States v. Jones*, 245 F.3d 645, 649 (7th Cir. 2001)). The same is true of *Alleyne*.

The Defendant's claim of ineffective assistance fails because he has not shown that his attorney's failure to advance an argument based on the Supreme Court's decision in *Alleyne* fell below an objective standard of reasonableness, or that the result of the proceedings would have been different.

2. *Concessions Regarding Drug Transactions*

The Defendant asserts that his trial counsel rendered ineffective assistance of counsel when he conceded the Defendant's involvement in cocaine transactions, and he denies that he met with co-defendant Castaneda four times at the Defendant's residence. Again, the Defendant has not shown that his attorney engaged in any conduct that fell below an objective standard of reasonableness, or that the result of the proceedings would have been different.

In a pre-sentencing brief filed on December 17, 2012, counsel advanced the Defendant's position regarding the quantity of drugs, namely, that he should only be held responsible for the drugs found in his residence at the time of the search, 1.1 grams of marijuana. (Sentencing Br. 7, 10.) This is the same argument regarding drug quantity that the Defendant advances in this collateral attack, so it is difficult to discern what the Defendant means when he claims that his counsel "betray[ed]" him. (Mot. 23, ECF No. 247.) Perhaps the Defendant is referencing the fact that counsel, to support the argument for a lower drug quantity, began by noting Silvestre Castaneda's trial testimony and Detective Martinez's sentencing hearing testimony as it related to drug quantities. However, the record shows that he highlighted the testimony in an attempt to show that the information from Castaneda was unreliable and could not be used to make a drug

quantity calculation under the preponderance of evidence standard. The Court, in its sentencing Opinion and Order dated December 3, 2013, understood counsel's sentencing arguments as an effort to undermine Castaneda's credibility. *See United States v. Sewell*, 2013 WL 6237986 at *7–8 (N.D. Ind. Dec. 3, 2013). The Court rejected the argument and found that, "based on a preponderance of the evidence, there is sufficient indicia of reliability to credit Castaneda's estimate of between 30 to 40 kilograms of cocaine sold to the Defendant." *Id.*, 2013 WL 6237986, at *8.

3.   *Tracking and Wiretap*

The Defendant's third and fourth claims of ineffective assistance center around counsel's failure to make the arguments regarding the tracking of Castaneda on the Defendant's curtilage, and the suppression of his intercepted conversations with Castaneda. For the reasons detailed above, counsel's decision not to challenge the wiretap of Castaneda's telephone and the discovery or admission of evidence obtained as a result did not fall below an objective standard of professional reasonableness. There is no reasonable probability that but for his decision, the results of the proceedings would have been different.

4.   *Career Offender Status*

The Defendant advances arguments related to his career offender status, arguing that his counsel should have taken action to prevent the designation from being assigned to him. The argument has no merit. The Defendant's Guideline range was impacted by the drug quantities at issue, and by his criminal history category, without regard to any career offender status. The United States Sentencing Commission Guideline for a violation of 21 U.S.C. § 856(a)(1) is

found in U.S.S.G. §§ 2D1.8 and 2D1.1. The Defendant's criminal activity was at least 15 kilograms but less than 50 kilograms of cocaine. (The drug amounts were confirmed on appeal.) The offense level specified in the Drug Quantity Table under U.S.S.G. §2D1.1(c)(4) sets a base offense level of 32. After the addition of two points for possession of a dangerous weapon and for maintaining a premises for purposes of distributing controlled substances, the offense level from the career offender subsection was not applicable, as it was not higher than the "offense level otherwise applicable." U.S.S.G. § 4B1.1(b). Additionally, the Defendant's criminal history category was at the highest level, Level VI, without application of the career offender designation.

The Defendant's offenses of conviction carried statutory penalties of not more than 10 years, pursuant to 18 U.S.C. §922(g)(1), and not more than 20 years pursuant to 21 U.S.C. § 856(b). Accordingly, there were no professionally competent arguments for his counsel to make on his behalf as it concerned the career offender designation. Had counsel made any such objection at the sentencing stage, the Court would have been within its rights to find that a ruling was unnecessary because it did not affect sentencing. *See* Fed. R. Crim. P. 32(i)(3)(B).

The Defendant asserts that counsel should have challenged the career offender designation and his sentence on appeal. But after the Court resentenced the Defendant in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), it did so on grounds that he no longer qualified for the statutory enhancement. Additionally, the sentence represented a downward variance from the Guidelines and was less than the statutory maximum. Indeed, the Seventh Circuit has already agreed with the analysis of counsel, advanced through a brief in which he sought to withdraw under *Anders v. California*, 386 U.S. 738 (1967), that there were no non-frivolous grounds for an

appeal of the sentence. *See United States v. Sewell*, Appeal No. 17-3108 (decided on Mar. 22, 2018).

5.  *Plea Agreement*

The Defendant complains that his lawyer never forwarded to him a plea bargain at any time prior to trial, and that this was deficient performance.

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 556 U.S. 134, 145 (2012); *see also Lafler v. Cooper*, 556 U.S. 156, 168 (2012) (noting that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel considering whether to accept it"). "If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Lafler*, 556 U.S. at 168. But, a defendant does not have a right to be offered a plea agreement, or to have a judge accept it. *Frye*, 556 U.S. at 1410.

Here, the Defendant has not presented any evidence that he informed his lawyer at any time that he considered pleading guilty, or that he did not want to go to trial. There is nothing in the record to suggest that the Government ever offered a plea agreement, much less one that he would have accepted instead of proceeding to trial. Neither has the Defendant indicated that his lawyer counseled against taking a plea or, conversely, advised him to proceed to trial. His Motion is silent on the issue of counsel's advice. In other words, there is nothing in the record to suggest that the Defendant would have accepted a plea agreement absent advice he received from his attorney. *See, e.g.*, *Coleman v. United States*, 339 F. App'x 643, 645 (7th Cir. 2009) (noting that a defendant who faults his lawyer for a breakdown in plea negotiations must establish a

14

reasonable probability that, if not for counsel's deficient advice, he would have accepted a plea offer).

## C. Trial Transcripts and Other Documents

The Defendant has filed numerous requests for transcripts and documents related to his case that he submits were essential to articulating his collateral attack arguments. The Court does not agree. The Defendant's arguments do not fail for lack of evidentiary proof, or citation to documents in the record. They are procedurally barred or lack any basis in law, even if the facts as alleged by the Defendant are considered true.

## CERTIFCATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Where the district court has rejected the constitutional claim on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. A defendant is not required to

show that he will ultimately succeed on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate"). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*, 529 U.S. at 484.

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue. Additional argument is not necessary here because no reasonable jurist could conclude that the Court's assessment of the Sixth Amendment claims regarding counsel's assistance during trial and on appeal was debatable or wrong. Additionally, no reasonable jurist could conclude that many of the Defendant's claims were presented as a recapitulation of or substitute for direct appeal, with no cause or prejudice to excuse the procedural default. The Court will not issue the Defendant a certificate of appealability.

## CONCLUSION

For the reasons stated above, the Court DENIES the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [ECF No. 247]. The Court declines to issue a certificate of appealability.

SO ORDERED on April 18, 2019.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT